FILED

2021 Aug-30  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| DOMINION MANAGEMENT, LLC; | ) | |
| DOMINION SENIOR LIVING OF | ) | |
| PEACHTREE CITY (ILF), LLC n/k/a | ) | |
| PEACHTREE CITY GA I SENIOR | ) | |
| PROPERTY LLC; | ) | |
| DOMINION SENIOR LIVING OF | ) | |
| PEACHTREE CITY (ALF), LLC n/k/a | ) | |
| PEACHTREE CITY GA II SENIOR | ) | |
| PROPERTY LLC; | ) | |
| DOMINION SENIOR LIVING OF | ) | |
| SANDY SPRINGS, LLC n/k/a | ) | |
| ATLANTA GA SENIOR PROPERTY LLC; | ) | |
| DOMINION SENIOR LIVING OF | ) | |
| FRANKLIN, LLC n/k/a FRANKLIN TN | ) | |
| SENIOR II PROPERTY LLC; | ) | |
| DOMINION SENIOR LIVING OF MT. | ) | |
| PLEASANT, LLC; | ) | |
| DOMINION SENIOR LIVING OF | ) | |
| SANTA ROSA BEACH, LLC n/k/a | ) | |
| SANTA ROSA FL SENIOR | ) | |
| PROPERTY LLC; and | ) | |
| STV ONE NINETEEN SENIOR | ) | |
| LIVING, LLC n/k/a BIRMINGHAM | ) | |
| AL SENIOR PROPERTY LLC, | ) | |
| | ) | |

Defendants.                                    )
_____)

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

The United States of America alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.   The United States brings this action to enforce the Fair Housing Act, as amended ("FHA"), 42 U.S.C. §§ 3601-3619, and the FHA's implementing regulations, 24 C.F.R. §§ 100.200-205; Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12213; and the ADA Standards for Accessible Design, *see* 28 C.F.R. Pt. 36, Appendices A & D ("ADA Standards"). As set forth below, the United States alleges that Defendants—the developer and owners of more than seven multifamily senior living complexes—have discriminated against persons with disabilities by failing to design and construct covered multifamily dwellings to be accessible to persons with disabilities.

2.   The FHA requires that certain multifamily dwellings developed for first occupancy after March 13, 1991, defined in the FHA as "covered multifamily dwellings," contain specified accessibility features to make them accessible to persons with disabilities.  42 U.S.C. § 3604(f).

3.   The ADA prohibits the failure to design and construct places of public accommodation built for first occupancy after January 26, 1993, that are readily

accessible to and usable by individuals with disabilities.  42 U.S.C. § 12183(a)(1).

Facilities are not readily accessible to and usable for individuals with disabilities if

they do not comply with the requirements of the ADA Standards.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and

1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).

5.  Venue is proper under 28 U.S.C. §§ 1391 because all the Defendants

reside or resided in this District and a substantial part of the events or omissions

giving rise to the claims alleged in this action occurred in this District.

## SUBJECT PROPERTIES

6.  Defendants have participated in the design and/or construction of one or

more of the multifamily senior living properties identified in the paragraphs below

(collectively, the "Subject Properties"):

7.  Somerby Peachtree City ("Peachtree City") is a continuing care

retirement community for seniors located at 300 Rockaway Road, Peachtree City,

Georgia 30269.  Peachtree City has two multi-level buildings serviced by

elevators: one building containing the independent living units and one building,

known as the care center, containing the assisted living and memory care units.

The independent living building has 101 apartment units.  The care center building

has 72 assisted living units and 24 memory care units.  Peachtree City also has,

*inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining rooms, mail centers, exercise facilities, a library, hair salons, activity rooms, a pool, and a theater.  Peachtree City was built for first occupancy between 2014 and 2016.

8.   Somerby Sandy Springs ("Sandy Springs") is a continuing care retirement community for seniors located at 25 Glenlake Parkway NE, Sandy Springs, Georgia 30328.  Sandy Springs is an elevator building with multiple wings and contains 200 dwelling units.  It has 128 independent living units, 48 assisted living units, and 24 memory care units.  Sandy Springs also has, *inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining rooms, mail centers, exercise facilities, a library, hair salons, activity rooms, a pool, and a theater.  Sandy Springs was constructed for first occupancy in 2017.

9.   Somerby Franklin ("Franklin") is a continuing care retirement community for seniors located at 870 Meadow Drive, Franklin, Tennessee 37064. Franklin is an elevator building with multiple wings and contains 208 covered dwelling units.  It has 136 independent living apartment units, 48 assisted living units, and 24 memory care units.  Franklin also has, *inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining

rooms, mail centers, exercise facilities, a library, hair salons, activity rooms, a pool, and a theater.  Franklin was built for first occupancy in 2017.

10.  Somerby Mount Pleasant ("Mount Pleasant") is a continuing care retirement community for seniors located at 3100 Tradition Circle, Mount Pleasant, South Carolina 29466.  Mount Pleasant is an elevator building with multiple wings and contains 244 covered dwelling units.  It has 131 independent living units, 51 assisted living units, and 38 memory care units.  Mount Pleasant also includes covered four-plex villas containing 24 units.  Mount Pleasant also has, *inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining rooms, mail centers, exercise facilities, a library, hair salons, and activity rooms.  Mount Pleasant was built for first occupancy in 2008.

11.  Somerby Santa Rosa Beach ("Santa Rosa Beach") is a senior living community located at 164 W. Hewett Road, Santa Rosa Beach, Florida 32459.  Santa Rosa Beach is an elevator building with multiple wings and contains 76 covered dwelling units.  It has 52 assisted living units and 24 memory care units.  Santa Rosa Beach also has, *inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining rooms, mail centers, exercise facilities, a library, hair salons, and activity rooms.  Santa Rosa Beach was built for first occupancy in 2014.

12.   Westside is a senior living community located at 100 Somerby Drive, Alpharetta, Georgia 30009.  Westside is an elevator building with two wings and contains 268 covered dwelling units.  It has 188 independent living units, 56 assisted living units, and 24 memory care units.  Westside also has, *inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining rooms, a mail center, exercise facilities, a library, hair salons, and activity rooms.  Westside was built for first occupancy in 2008.

13.   Somerby St. Vincent's One Nineteen ("St. Vincent's") is a senior living community located at 200 One Nineteen Boulevard, Birmingham, Alabama 35242. St. Vincent's is an elevator building with multiple wings and contains 207 covered dwelling units.  It has 135 independent living units, 48 assisted living units, and 24 memory care units.  St. Vincent's also has, *inter alia*, a leasing office, public and common-use restrooms for residents and prospective residents, dining rooms, a mail center, an exercise facility, a library, a hair salon, and activity rooms.  St. Vincent's was built for first occupancy in approximately 2008 to 2010.

## DEFENDANTS

14.   Defendant Dominion Management, LLC ("Dominion Management") is a construction, development, and management company based in Birmingham, Alabama.  Dominion Management developed each of the Subject Properties and its principals or related entities have or had an ownership interest in each of the

companies that owns or owned the Subject Properties.  Dominion Management is a
domestic limited liability company and its business address is 2700 Corporate
Drive, Suite 125, Birmingham, Alabama 35242.  Dominion Management was
involved in the design and construction of the Subject Properties.

15.  Defendant Dominion Senior Living of Peachtree City (ILF), LLC, n/k/a
Peachtree City GA I Senior Property LLC  ("Dominion Peachtree City (ILF)") is a
Delaware limited liability company.  At all times relevant to this complaint,
Dominion Peachtree City (ILF)'s business address was 1200 Corporate Drive,
Suite 225, Birmingham, Alabama 35242.  Dominion Peachtree City (ILF) owns
Peachtree City's independent living building and was involved in its design and
construction.

16.  Defendant Dominion Senior Living of Peachtree City (ALF), LLC,
n/k/a Peachtree City GA II Senior Property LLC, ("Dominion Peachtree City
(ALF)") is a Delaware limited liability company.  At all times relevant to this
complaint, Dominion Peachtree City (ALF)'s business address was 1200 Corporate
Drive, Suite 225, Birmingham, Alabama 35242.  Dominion Peachtree City (ALF)
owns Peachtree City's care center building and was involved in its design and
construction.

17.  Defendant Dominion Senior Living of Sandy Springs, LLC, n/k/a
Atlanta GA Senior Property LLC  ("Dominion Sandy Springs") is a Delaware

limited liability company.  At all times relevant to this complaint, Dominion Sandy Springs' business address was 1200 Corporate Drive, Suite 225, Birmingham, Alabama 35242.  Dominion Sandy Springs owns the Sandy Springs Subject Property and was involved in its design and construction.

18.  Defendant Dominion Senior Living of Franklin, LLC, n/k/a Franklin TN Senior II Property LLC  ("Dominion Franklin") is a Delaware limited liability company.  At all times relevant to this complaint, Dominion Franklin's business address was 1200 Corporate Drive, Suite 225, Birmingham, Alabama 35242. Dominion Franklin owns the Franklin Subject Property and was involved in its design and construction.

19.  Defendant Dominion Senior Living of Mt. Pleasant, LLC ("Dominion Mt. Pleasant") is a Delaware limited liability company.  At all times relevant to this complaint, Dominion Mt. Pleasant's business address was 2700 Corporate Drive, Suite 125, Birmingham, Alabama 35242.  Dominion Mt. Pleasant owned the Mount Pleasant Subject Property and was involved in its design and construction.

20.  Dominion Senior Living of Santa Rosa Beach, LLC, n/k/a Santa Rosa FL Senior Property LLC  ("Dominion Santa Rosa Beach") is a Delaware limited liability company.  At all times relevant to this complaint, Dominion Santa Rosa Beach's business address was 1200 Corporate Drive, Suite 225, Birmingham,

Alabama 35242.  Dominion Santa Rosa Beach owns the Santa Rosa Beach Subject Property and was involved in its design and construction.

21.  STV One Nineteen Senior Living, LLC, n/k/a Birmingham AL Senior Property LLC ("STV One Nineteen") is a Delaware limited liability company.  At all times relevant to this complaint, STV One Nineteen's business address was 2700 Corporate Drive, Suite 125, Birmingham, Alabama 35242.  STV One Nineteen owns the St. Vincent's Subject Property and was involved in its design and construction.

22.  This complaint refers collectively to the following defendants as "Defendants": Dominion Management, LLC; Dominion Senior Living of Peachtree City (ILF), LLC, n/k/a Peachtree City GA I Senior Property LLC; Dominion Senior Living of Peachtree City (ALF), LLC, n/k/a Peachtree City GA II Senior Property LLC; Dominion Senior Living of Sandy Springs, LLC, n/k/a Atlanta GA Senior Property LLC; Dominion Senior Living of Franklin, LLC, n/k/a Franklin TN Senior II Property LLC; Dominion Senior Living of Mt. Pleasant, LLC; Dominion Senior Living of Santa Rosa Beach, LLC, n/k/a Santa Rosa FL Senior Property LLC; and STV One Nineteen Senior Living, LLC, n/k/a Birmingham AL Senior Property LLC.

23.  Defendants participated in the design and construction of the Subject Properties.  As set forth below, the Subject Properties were designed and

constructed without the accessibility features required by the FHA and ADA. As the entities that owned, designed, and constructed the Subject Properties, Defendants are liable for the violations of the FHA and ADA at the Subject Properties.

## FACTUAL ALLEGATIONS

24. The Subject Properties described above were designed and constructed for first occupancy after March 13, 1991.

25. The Subject Properties described above are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

26. The Subject Properties described above contain "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7).

27. The covered multifamily dwellings at the Subject Properties described above are subject to the accessibility requirements of 42 U.S.C. § 3604(f).

28. The leasing offices, public restrooms, and other public spaces at the Subject Properties described above are places of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104.

29. The leasing offices, public restrooms, and other public spaces at the Subject Properties were designed and constructed for first occupancy after January 26, 1993.

30.  The leasing offices, public restrooms, and other public spaces at the Subject Properties are required to meet the accessibility requirements of the ADA Standards.

31.  The leasing offices, public restrooms, and other public spaces at the Subject Properties are not, in part, designed and constructed so that they are readily accessible to and usable by individuals with disabilities, as required by the ADA, 42 U.S.C. § 12183(a)(1).  These spaces fail to comply with the ADA Standards.

32.  The United States obtained and reviewed property plans and accessibility inspection reports related to the Subject Properties.  The United States also inspected the exterior routes, public and common use areas, and one of each unit type at the Peachtree City and Sandy Springs Subject Properties.  These plans, inspections, and accessibility reports show inaccessible features at covered units, including, but not limited to, doorways that are too narrow, electrical controls and thermostats mounted too high, inaccessible routes through the units, molded shower surrounds that prevent the later installation of grab bars, and bathrooms and kitchens with insufficient clear floor space in violation of the FHA, 42 U.S.C. § 3604.  The plans and inspections further show inaccessible features in the public and common use areas, including, but not limited to, excessive slopes, lack of accessible parking, barriers at primary entrance doors, inaccessible mail boxes, and inaccessible bathrooms in violation of the FHA, 42 U.S.C. § 3604.

33.   These plans and inspections show that the leasing offices, public restrooms, and other public spaces at the Subject Properties are not designed and constructed so that they are readily accessible to and usable by individuals with disabilities, in violation of the ADA, 42 U.S.C. § 12183(a)(1).  These spaces also fail to comply with the ADA Standards.

34.   The following is an illustrative, but not exhaustive, list of inaccessible features created and caused by Defendants in designing and constructing the Subject Properties.

**Peachtree City**

35.   The inaccessible features at Peachtree City include, but are not limited to:

   a.   barriers at amenities provided onsite, such as golf cart parking and pet waste stations, including lack of an accessible route from units to the onsite amenities;

   b.   barriers at amenities provided onsite, such as the mail facility and firepit, including amenities mounted at heights too high or too low for people using wheelchairs to reach;

c.  barriers in the public and common use walkways leading to building primary entry doors, including running slopes[1] and cross slopes that are too steep to allow people using wheelchairs to traverse safely.  For example, there are cross slopes greater than 2%, ramps with slopes greater than 8.33%, landings at door maneuvering spaces greater than 2% slope in all directions, and unbeveled changes in level at entry doors greater than 1/4 inch;

d.  lack of an accessible pedestrian route from the site arrival point to the building entrances because of a lack of sidewalks;

e.  barriers at public and common use accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route. For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

f.  barriers in public and common use restrooms, including a lack of clear floor space for people using wheelchairs to operate the doors or use the fixtures, toilet centerlines that are greater than 18 inches from the sidewall, missing grab bars, and an inaccessible pool rinsing shower;

---

[1]  A "running slope" is "the slope that is parallel to the direction of travel," and a "cross slope" is a slope that is perpendicular to the direction of travel.  ICC/ANSI A117.1-2003.  Running and cross slopes are measured in a ratio of rise to run (or height to length).

g.  barriers at doorways, including a lack of clear floor space for people using wheelchairs to operate the doors;

h.  closet doors in units that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

i.  routes into and through units that are too narrow, severely limiting the ability of people using wheelchairs to pass through.  For example, passageways are less than 36 inches wide in routes into and through unit bathrooms;

j.  outlets in kitchens that are inaccessible to people using wheelchairs because of obstructions caused by appliances;

k.  molded shower surrounds that preclude the later installation of grab bars;

l.  insufficient space in unit kitchens to allow people using wheelchairs to reach and use kitchen sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on kitchen sinks; and

m. insufficient space in bathrooms to allow people using wheelchairs to safely transfer to and from the showers and to and from the toilets. For example, showers have less than 30-inch by 48-inch clear floor space and toilets have a centerline less than 18 inches from a sidewall.

## Sandy Springs

36.  The inaccessible features at Sandy Springs include, but are not limited to:

    a.  barriers at amenities provided onsite, such as pet waste stations, including lack of an accessible route from units to the onsite amenities;

    b.  barriers at amenities provided onsite, such as the mail facilities, including amenities mounted at heights too high for people using wheelchairs to reach;

    c.  barriers in the public and common use walkways leading to building primary entry doors, including running slopes and cross slopes that are too steep to allow people using wheelchairs to traverse safely.  For example, there are cross slopes greater than 2%, ramps with slopes greater than 8.33%, landings at door maneuvering spaces greater than 2% slope in all directions, and unbeveled changes in level at entry doors greater than 1/4 inch;

    d.  barriers at common use accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example,

wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

e.  barriers to accessible parking, including a lack of accessible parking spaces in the covered garage;

f.  barriers in public and common use restrooms, including a lack of clear floor space for people using wheelchairs to operate the doors or use the fixtures, missing grab bars, paper towel dispensers mounted too high, toilet paper dispensers mounted in inaccessible locations, and a lack of pipe protection on sinks;

g.  closet doors in units that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

h.  thermostats in units that are mounted higher than 48 inches, which is too high for people using wheelchairs to reach, outlets that are mounted lower than 15 inches, which is too low for people using wheelchairs to reach, and outlets in kitchens that are inaccessible to people using wheelchairs because of obstructions caused by appliances;

i.  molded shower surrounds that preclude the later installation of grab bars;

j.  insufficient space in unit kitchens to allow people using wheelchairs
    to reach and use the kitchen sinks.  For example, there is less than 30-
    inch by 48-inch clear floor space centered on kitchen sinks; and

k.  insufficient space in bathrooms to allow people using wheelchairs to
    safely transfer to and from the showers.  For example, showers have
    less than 30-inch by 48-inch clear floor space.

### Franklin

37.  The inaccessible features at Franklin include, but are not limited to:

a.  barriers at amenities provided onsite, including amenities mounted at
    heights too high for people using wheelchairs to reach;

b.  barriers in the public and common use walkways leading to building
    primary entry doors, including running slopes and cross slopes that
    are too steep to allow people using wheelchairs to traverse safely.  For
    example, there are running slopes that are greater than 5% without
    handrails, cross slopes greater than 2%, ramps with slopes greater than
    8.33%, and unbeveled changes in level greater than 1/4 inch;

c.  barriers in public and common use restrooms, including a lack of clear
    floor space for people using wheelchairs to operate the doors or use
    the fixtures, toilet centerlines that are less than 18 inches from a
    sidewall, and missing grab bars;

17

d.  barriers at doorways, including a lack of clear floor space for people using wheelchairs to operate the doors;

e.  thermostats in units that are mounted higher than 48 inches, which is too high for people using wheelchairs to reach; and

f.  insufficient space in bathrooms to allow people using wheelchairs to safely transfer to and from the showers.

**Mount Pleasant**

38.  The inaccessible features at Mount Pleasant include, but are not limited to:

a.  barriers at amenities provided onsite, such as the mail facility, including amenities mounted at heights too high for people using wheelchairs to reach;

b.  barriers in the public and common use walkways leading to primary entry doors, including a change in level in excess of 1/2 inch at the passenger drop off area;

c.  barriers in the public and common use routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route.  For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

d.  barriers in public and common use restrooms, including a lack of clear floor space for people using wheelchairs to use the fixtures and toilet paper dispensers that are mounted too low;

e.  closet doors in units that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

f.  thermostats in units that are mounted higher than 48 inches, which is too high for people using wheelchairs to reach, and toilet paper holders that are mounted below 19 inches which is too low for people using wheelchairs to reach;

g.  insufficient space in unit kitchens to allow people using wheelchairs to reach and use ranges and kitchen sinks.  For example, there is less than 30-inch by 48-inch clear floor space centered on ranges and kitchen sinks; and

h.  insufficient space in bathrooms to allow people using wheelchairs to safely transfer to and from the toilets, to and from the showers, or to use the sinks.  For example, there is less than 30-inch by 48-inch clear floor space at the sinks and the showers and the toilets lack a 33-inch wide space.

**Santa Rosa Beach**

39.  The inaccessible features at Santa Rosa Beach include, but are not limited to:

a.  a lack of an accessible pedestrian route from the site arrival point to the building entrances because of a lack of sidewalks;

b.  thermostats in common use areas that are mounted higher than 54 inches which is too high for people using wheelchairs to reach; and

c.  thermostats in units that are mounted higher than 48 inches, which is too high for people using wheelchairs to reach.

**Westside**

40.  The inaccessible features at Westside include, but are not limited to:

a.  barriers at amenities provided onsite, including amenities mounted at heights too high for people using wheelchairs to reach;

b.  barriers at public and common use accessible routes, including wall-mounted objects that protrude too far into the circulation space and could injure people with vision impairments when using the route. For example, wall-mounted objects protrude more than 4 inches and are mounted between 27 and 80 inches above the finished floor;

c.  outlets in kitchens that are inaccessible to people using wheelchairs because of obstructions caused by appliances;

d.  molded shower surrounds that preclude the later installation of grab bars;

e.  insufficient space in unit kitchens to allow people using wheelchairs to reach and use kitchen sinks and stoves.  For example, there is less than a 30-inch by 48-inch clear floor space centered on kitchen sinks and less than a 30-inch by 48-inch clear floor space at stoves; and

f.  insufficient space in bathrooms to allow people using wheelchairs to safely transfer to and from the showers.  For example, showers have less than 30-inch by 48-inch clear floor space.

**St. Vincent's**

41.  The inaccessible features at St. Vincent's include, but are not limited to:

a.  barriers at amenities provided onsite, including amenities mounted at heights too high for people using wheelchairs to reach;

b.  closet doors in units that are too narrow, severely limiting the ability of people using wheelchairs to access the closets;

c.  outlets in kitchens that are inaccessible to people using wheelchairs because of obstructions caused by appliances;

d.  insufficient space in unit kitchens to allow people using wheelchairs to reach and use kitchen sinks.  For example, there is less than a 30-inch by 48-inch clear floor space centered on kitchen sinks; and

e.  insufficient space in bathrooms to allow people using wheelchairs to use the sinks.  For example, there is less than a 30-inch by 48-inch clear floor space at the bathroom sinks.

## FAIR HOUSING ACT CLAIMS

42.  The United States re-alleges and incorporates by reference the allegations set forth above.

43.  The conduct of Defendants described above violates 42 U.S.C. §§ 3604(f)(1), (f)(2), and (f)(3)(C).

44.  Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multifamily dwellings in such a manner that:

a.  the public common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

b.  all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by an individual using a wheelchair;

c.  all premises within such dwellings contain the following features of adaptive design:

i.  an accessible route into and through the dwelling;

    ii.    light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

    iii.    reinforcements in bathroom walls to allow later installation of grab bars; and

    iv.    usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

45.  Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.  discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.  discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

    c.  failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

46.  The conduct of Defendants described above constitutes:

   a.  a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, within the meaning of 42 U.S.C. § 3614(a); and

   b.  a denial to a group of persons of rights granted by the FHA, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance, within the meaning of 42 U.S.C. § 3614(a).

47.  Persons who may have been the victims of Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries because of the conduct described above.

48.  The conduct of Defendants described above was intentional, willful, and taken in disregard of the rights of others.

## AMERICANS WITH DISABILITIES ACT CLAIMS

49.  The United States re-alleges and incorporates the allegations set forth above.

50.  Defendants have failed to design and construct the leasing offices and other places of public accommodation at the Subject Properties in a manner required by 42 U.S.C. § 12183(a)(1), 28 C.F.R. §§ 36.401 and 36.406, and 28 C.F.R. Pt. 36, Appendix A.

51.  Defendants' conduct described above constitutes:

   a. a pattern or practice of discrimination within the meaning of 42
      U.S.C. § 12188(b)(1)(B)(i) and 28 C.F.R. § 36.503(a); and

   b. unlawful discrimination that raises an issue of general public
      importance within the meaning of 42 U.S.C. § 12188(b)(1)(B)(ii) and
      28 C.F.R. § 36.503(b).

52.   Persons who have been the victims of Defendants' discriminatory conduct are aggrieved persons as defined in 42 U.S.C. § 12188(b)(2)(B), and may have suffered injuries as a result of the conduct described above.

53.   Defendants' conduct described above was intentional, willful, and taken in disregard for the rights of others.

## OTHER MULTIFAMILY SENIOR LIVING PROPERTY

54.   Defendant Dominion Management, directly and/or through its affiliates and/or subsidiaries, also has participated in the design and construction of Fleming Farms, a multifamily senior living property located at 4670 Bellewood Drive, SE, Huntsville, Alabama 35802.  Dominion Management's pattern or practice of failing to design and construct dwellings and public and common-use areas in compliance with the FHA and ADA, as alleged herein, may extend to this multifamily senior living property as well.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

    a.  Declares that the conduct of Defendants, as alleged in this complaint, violates the FHA and ADA;

    b.  Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them from:

        i.  failing or refusing to bring the dwelling units and public and common use areas at covered multifamily properties in which each Defendant was or is involved in the design and/or construction into full compliance with the FHA;

        ii.  failing or refusing to bring the public accommodations designed and/or constructed by Defendants including, but not limited to, the leasing offices, public restrooms, and other public spaces for the Subject Properties, into compliance with the ADA and the ADA Standards;

        iii.  failing or refusing to conduct compliance surveys to determine whether the retrofits ordered in paragraphs (i) and (ii) above or otherwise performed comply with the FHA and ADA;

      iv.  designing or constructing any covered multifamily dwellings and public and common use areas in the future that do not comply with the FHA and ADA; and

      v.  failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

c.  Enjoins Defendants from engaging in conduct that impedes any retrofits required to bring the Subject Properties, including covered multifamily dwelling units and public and common use areas, into compliance with the FHA and ADA in a prompt and efficient manner while minimizing inconvenience to the residents and visitors at the properties;

d.  Awards monetary damages under 42 U.S.C. §§ 3614(d)(1)(B) and 12188(b)(2)(B) to all persons harmed by Defendants' discriminatory practices; and

e.  Assesses a civil penalty against each Defendant who participated in the design and construction of a covered multifamily property within the past five years, in an amount authorized by 42 U.S.C. §§ 3614(d)(1)(C) and 12188(b)(2)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

Dated:        August 30, 2021

Respectfully submitted,

MERRICK B. GARLAND
Attorney General

PRIM S. ESCALONA
Acting United States Attorney
Northern District of Alabama

*/s Kristen Clarke*
KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

*/s Jason R. Cheek*
JASON R. CHEEK
Deputy Chief, Civil Division
1801 4th Avenue North
Birmingham, Alabama 35203
Phone: (205) 244-2104
E-mail: jason.cheek@usdoj.gov

*/s Sameena Shina Majeed*
SAMEENA SHINA MAJEED
Chief

MARY JANE STEWART
Acting United States Attorney
Middle District of Tennessee

*/s Julie J. Allen*
MICHAEL S. MAURER
Deputy Chief
JULIE J. ALLEN
Trial Attorney
Housing and Civil Enforcement
Section
Civil Rights Division
U.S. Department of Justice
150 M Street, N.E., 8th Floor
Washington, DC 20530
Phone: (202) 307-6275
Fax: (202) 514-1116
E-mail: julie.allen@usdoj.gov

*/s Ellen Bowden McIntyre*
ELLEN BOWDEN MCINTYRE
Assistant United States Attorney
Middle District of Tennessee
110 9th Avenue South
Suite A-961
Nashville, Tennessee 37203
Phone: (615) 736-5151
E-mail: ellen.bowden2@usdoj.gov

Attorneys for Plaintiff
United States of America